## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EAGLE PHARMACEUTICALS, INC.,

Plaintiff,

v.

ACCORD HEALTHCARE INC.,
ACCORD HEALTHCARE LTD., and
INTAS PHARMACEUTICALS LTD.,

Defendant.

C.A. No. 22-704-CFC

## AMENDED COMPLAINT

Plaintiff Eagle Pharmaceuticals, Inc. ("Eagle"), by its attorneys, for its Complaint, alleges as follows:

1.     This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, that arises out of the submission of New Drug Application ("NDA") No. 216987 ("Accord's NDA") by Defendants Accord Healthcare Inc., Accord Healthcare Ltd., and Intas Pharmaceuticals Ltd. (collectively, "Accord") to the United States Food and Drug Administration ("FDA") that includes a certification under 21 U.S.C. § 355(b)(2)(A)(iv) ("Paragraph IV Certification") that Accord is requesting approval from FDA of its NDA to manufacture and sell its proposed product, which relies on data from bioavailability and/or bioequivalence studies contained in Eagle's FDA-approved

ME1 41352116v.1

NDA No. 205580 for BELRAPZO®, 100 mg/4 mL (25 mg/mL) Bendamustine Hydrochloride Injection product, prior to the expiration of Eagle's U.S. Patent No. 11,103,483 ("the '483 patent," or "the Patent-in-Suit").

## PARTIES

2.     Plaintiff Eagle is a corporation organized and existing under the laws of Delaware, with its corporate offices and principal place of business at 50 Tice Boulevard, Suite 315, Woodcliff Lake, New Jersey 07677.

3.     On information and belief, Defendant Accord Healthcare Inc. is a corporation organized and existing under the laws of North Carolina, with its principal place of business at 1009 Slater Road, Suite 210-B, Durham, North Carolina 27703.  On information and belief, Accord Healthcare Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs throughout the United States, including Delaware.

4.     On information and belief, Defendant Accord Healthcare Ltd. is a corporation organized and existing under the laws of the Republic of India, with a place of business at Corporate House, Near Sola Bridge, S.G. Highway, Thaltej, Ahmedabad, Gujarat 380 054, Republic of India.  On information and belief, Accord Healthcare Ltd. is in the business of, among other things, manufacturing and selling generic versions of pharmaceutical drug products, including through various

2

affiliates, including Accord Healthcare Inc., throughout the United States, including Delaware.

5.     On information and belief, Defendant Intas Pharmaceuticals Ltd. is a corporation organized and existing under the laws of the Republic of India, with a place of business at Chinubhai Centre, Off. Nehru Bridge, Ashram Road, Ahmedabad, Gujarat 380 009, Republic of India.  On information and belief, Intas Pharmaceuticals Ltd. is in the business of, among other things, manufacturing and selling generic versions of pharmaceutical drug products, including through various operating subsidiaries, including Accord Healthcare Inc. and Accord Healthcare Ltd., throughout the United States, including Delaware.

6.     On information and belief, Accord Healthcare Inc. is a wholly owned subsidiary of Intas Pharmaceuticals Ltd. and the U.S. agent for Intas Pharmaceuticals Ltd.

7.     On information and belief, Accord Healthcare Ltd. is a wholly owned subsidiary of Intas Pharmaceuticals Ltd.

8.     On information and belief, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. acted in concert to prepare and submit Accord's NDA to FDA.

9.     On information and belief, Intas Pharmaceuticals Ltd. and Accord Healthcare Ltd. actively encouraged, recommended, and promoted that Accord

ME1 41352116v.1

Healthcare Inc. prepare and submit Accord's NDA to FDA and knew that the filing of Accord's NDA would infringe the Patent-in-Suit, including because Intas Pharmaceuticals Ltd. and Accord Healthcare Ltd. knew that Accord's NDA would include a Paragraph IV Certification pursuant to 21 U.S.C. § 355(b)(2)(A)(iv) with respect to the Patent-in-Suit.

10.    On information and belief, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. know and intend that upon approval of Accord's NDA, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. will manufacture a Bendamustine Hydrochloride Injection product, 100 mg/4 mL (25 mg/mL) in a multi-dose vial ("Accord's NDA Product"); and Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. will directly or indirectly market, sell, and distribute Accord's NDA Product throughout the United States, including Delaware.  On information and belief, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. are agents of each other and/or operate in concert as integrated parts of the same business group, including with respect to Accord's NDA Product, and enter into agreements that are nearer than arm's length.  On information and belief, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. participated, assisted, and cooperated in carrying out the acts complained about herein.

11.     On information and belief, following any FDA approval of Accord's NDA, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. will act in concert to distribute and sell Accord's NDA Product throughout the United States, including within Delaware.

## JURISDICTION

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

13.     Based on the facts and causes alleged herein, and for additional reasons to be further developed through discovery if necessary, this Court has personal jurisdiction over Accord Healthcare Inc., Accord Healthcare Ltd., and Intas Pharmaceuticals Ltd.

14.     This Court has personal jurisdiction over Accord because, among other things, Accord Healthcare Inc., itself and through its parent Intas Pharmaceuticals Ltd. and affiliate Accord Healthcare Ltd., has purposefully availed itself of the benefits and protections of Delaware's laws such that they should reasonably anticipate being haled into court here.  On information and belief, Accord Healthcare Inc., itself and through its parent Intas Pharmaceuticals Ltd. and affiliate Accord Healthcare Ltd., develops, manufactures, imports, markets, offers to sell, sells, and/or imports generic drugs throughout the United States, including in Delaware,

5

and therefore transacts business within Delaware, and/or has engaged in systematic and continuous business contacts within Delaware.

15.    In addition, this Court has personal jurisdiction over Accord Healthcare Inc. because, on information and belief, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. are alter egos of each other. Therefore, Intas Pharmaceuticals Ltd.'s and Accord Healthcare Ltd.'s activities in Delaware are attributable to Accord Healthcare Inc.

16.    This Court has personal jurisdiction over Intas Pharmaceuticals Ltd. because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  On information and belief, Intas Pharmaceuticals Ltd., itself and through its subsidiaries Accord Healthcare Inc. and Accord Healthcare Ltd., develops, manufactures, imports, markets, offers to sell, sells, and/or imports generic drugs throughout the United States, including in Delaware, and therefore transacts business within Delaware relating to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within Delaware.

17.    In addition, this Court has personal jurisdiction over Intas Pharmaceuticals Ltd. because, on information and belief, Intas Pharmaceuticals Ltd. directs and controls Accord Healthcare Inc. and Accord Healthcare Ltd.; and Accord Healthcare Inc., Intas Pharmaceuticals Ltd., Accord Healthcare Ltd., are alter egos

6

of each other.  Therefore, Accord Healthcare Inc.'s and Accord Healthcare Ltd.'s activities in Delaware are attributable to Intas Pharmaceuticals Ltd.

18.    This Court has personal jurisdiction over Accord Healthcare Ltd. because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  On information and belief, Accord Healthcare Ltd., itself and through its affiliate Accord Healthcare Ltd. and parent Intas Pharmaceuticals Inc., develops, manufactures, imports, markets, offers to sell, sells, and/or imports generic drugs throughout the United States, including in Delaware, and therefore transacts business within Delaware relating to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within Delaware.

19.    In addition, this Court has personal jurisdiction over Accord Healthcare Ltd. because, on information and belief, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., Accord Healthcare Ltd., are alter egos of each other. Therefore, Accord Healthcare Inc.'s and Intas Pharmaceuticals Ltd.'s activities in Delaware are attributable to Accord Healthcare Ltd.

20.    In addition, this Court also has personal jurisdiction over Accord because, among other things, on information and belief: (1) Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. filed Accord's NDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for

7

sale, sale, and/or importation of Accord's NDA Product in the United States, including in Delaware; and (2) upon approval of Accord's NDA, Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. will market, distribute, offer for sale, sell, and/or import Accord's NDA Product in the United States, including in Delaware, and will derive substantial revenue from the use or consumption of Accord's NDA Product in Delaware. *See Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 763 (Fed. Cir. 2016). On information and belief, upon approval of Accord's NDA, Accord's NDA Product will, among other things, be marketed, distributed, offered for sale, sold, and/or imported in Delaware; prescribed by physicians practicing in Delaware; dispensed by pharmacies located within Delaware; and/or used by patients in Delaware, all of which would have a substantial effect on Delaware.

21.    In addition, this Court has personal jurisdiction over Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. because they have committed, aided, abetted, induced, contributed to, or participated in the commission of the tortious act of patent infringement that has led and/or will lead to foreseeable harm and injury to Eagle, a Delaware corporation.

22.    In addition, this Court has personal jurisdiction over Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. because they regularly engage in patent litigation concerning Accord's NDA or Abbreviated New Drug

Application ("ANDA") Products in this District, have previously consented to personal jurisdiction in this District, and/or have purposefully availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this District.[1]

23.     In addition, this Court has personal jurisdiction over Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. because, by e-mail dated May 24, 2022 (Exhibit A hereto), Accord confirmed that it will not oppose jurisdiction in the District of Delaware for purposes of this action, and thus has consented to this Court's exercise of personal jurisdiction for purposes of this action.

24.     For the above reasons, it would not be fundamentally unfair or unreasonable for Accord Healthcare Inc., Intas Pharmaceuticals Ltd., and Accord Healthcare Ltd. to litigate this action in this District, and the Court has personal jurisdiction over them here.

---

[1] *See, e.g., Teva Pharmaceuticals Int'l GmbH et al. v. Accord Healthcare Inc.*, C.A. No. 21-952-CFC (D. Del. Feb. 10, 2022), D.I. 24; *Purdue Pharma LP et al. v. Accord Healthcare Inc. et al.*, C.A. No. 20-1362-RGA-SRF (D. Del. Mar. 12, 2021), D.I. 14; *Merck Sharp & Dohme Corp. v. Accord Healthcare Inc. et al.*, C.A. No. 19-2192-RGA (D. Del. Jan. 24, 2020), D.I. 13; *Amgen Inc. v. Accord Healthcare, Inc. et al.*, C.A. No. 18-956-MSG (D. Del. Sept. 18, 2018), D.I. 10; *Novartis Pharm. Co. v. Accord Healthcare Inc. et al.*, C.A. No. 18-1043-LPS (D. Del. Aug. 8, 2018), D.I. 46.

ME1 41352116v.1

## VENUE

25.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

26.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) with respect to Accord Healthcare Inc., at least because, on information and belief, Accord is subject to personal jurisdiction in this District and has previously consented to venue in this District in a related litigation on bendamustine.[2]

27.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) with respect to Accord Healthcare Ltd., at least because, on information and belief, Accord Healthcare Ltd. is a foreign corporation that may be sued in any judicial district in which it is subject to the Court's personal jurisdiction and has previously consented to venue in this District.[3]

28.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) with respect to Intas Pharmaceuticals Ltd., at least because, on information and belief, Intas Pharmaceuticals Ltd. is a foreign corporation that may be sued in any judicial district in which it is subject to the Court's personal jurisdiction and has

---

[2] *See supra* ¶ 9;  *Teva Pharmaceuticals Int'l GmbH et al. v. Accord Healthcare Inc.*, C.A. No. 21-952-CFC (D. Del. Jun. 29, 2021), D.I. 24.

[3] *See supra* ¶ 4;  *Teva Pharmaceuticals Int'l GmbH et al. v. Accord Healthcare Inc.*, C.A. No. 21-0952-CFC (D. Del. Jun. 29, 2021), D.I. 1.

previously consented to venue in this District.[4] In addition, venue is proper in this District with respect to Accord Healthcare Inc., Accord Healthcare Ltd., and Intas Pharmaceuticals Ltd because, by e-mail dated May 24, 2022 (Exhibit A hereto), Accord confirmed that it will not oppose venue in the District of Delaware for purposes of this action, and thus has consented to venue in this District for purposes of this action.

## **BACKGROUND**

29.     BELRAPZO®, which contains bendamustine hydrochloride, is an alkylating drug that is indicated for the treatment of patients with chronic lymphocytic leukemia, as well as for the treatment of patients with indolent B-cell non-Hodgkin lymphoma that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.

30.     Eagle is the holder of NDA No. 205580 for BELRAPZO®, whose NDA has been approved by the FDA.

31.     The '483 patent, entitled "Formulations of Bendamustine" (Exhibit B hereto), was duly and legally issued on August 31, 2021.  Eagle is the owner and assignee of the '483 patent.  The '483 patent is listed in connection with BELRAPZO® in the Orange Book.

---

[4] *See supra* ¶ 5;  *Teva Pharmaceuticals Int'l GmbH et al. v. Accord Healthcare Inc.*, C.A. No. 21-0952-CFC (D. Del. Jun. 29, 2021), D.I. 1.

## INFRINGEMENT BY ACCORD

32.    By letter dated April 18, 2022 ("Accord Notice Letter"), Accord notified Eagle pursuant to the Federal Food, Drug, and Cosmetic Act ("FDCA") that Accord had submitted to the FDA NDA No. 216987 under Section 505(b)(2) of the FDCA, seeking approval from the FDA to engage in the commercial manufacture, use, and/or sale of Accord's NDA Product prior to the expiration of the Patent-in-Suit.  The Accord Notice Letter purported to include the information required by statute – to wit, a "detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed."   21 U.S.C. § 355(b)(3)(D)(ii).

33.    Accord's NDA relies on data from bioavailability and/or bioequivalence studies contained in the approved NDA and/or labeling for BELRAPZO®.  BELRAPZO® is approved for a 24-month shelf life.  The Accord Notice Letter does not identify any difference in stability between Accord's NDA Product and BELRAPZO® and, Accord's NDA Product has the same or substantially similar stability as BELRAPZO® and as recited in the claims of the Patent-in-Suit.

34.    BELRAPZO® is an embodiment of the claims of the Patent-in-Suit. BELRAPZO® is a ready to use liquid bendamustine-containing composition comprising 25 mg/mL bendamustine hydrochloride, polyethylene glycol, about 10%

propylene glycol, and a stabilizing amount of an antioxidant, monothioglycerol. BELRAPZO® has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC at a wavelength of 223 nm after at least 15 months at a temperature of from about 5 °C to about 25 °C. BELRAPZO® is a long term storage stable non-aqueous liquid. The bendamustine-containing composition of BELRAPZO® has less than or equal to 0.11% total PG esters at about 1 month of storage at a temperature of about 5 °C, and the ratio of polyethylene glycol to propylene glycol is about 90:10.

35. Pursuant to 35 U.S.C. § 271(e)(2), "[i]t shall be an act of infringement to submit—

> (A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent . . . ."

36. The Accord Notice Letter represents that Accord submitted NDA No. 216987 listing BELRAPZO® as the Reference Listed Drug and that Accord submitted a Paragraph IV Certification seeking to obtain approval under Section 505(b)(2) of the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Accord's NDA Product prior to the expiration of the Patent-in-Suit.

37. The active ingredient of Accord's NDA Product is bendamustine hydrochloride.

38.     The proposed dosage strength of Accord's NDA Product is 25 mg/mL, 4 mL.

39.     In the Accord Notice Letter, Accord did not disclose the composition of Accord's NDA Product and furnish samples, data, or other information sufficient to confirm independently the exact composition of Accord's NDA Product and assess the properties and functions of Accord's NDA Product.

40.     Accord's NDA Product contains polyethylene glycol.  The Accord Notice Letter does not dispute that Accord's NDA Product contains polyethylene glycol.

41.     Accord's NDA Product contains a stabilizing amount of an antioxidant. Accord's NDA Product contains an amount of an antioxidant that decreases the amount of bendamustine degradation.  The Accord Notice Letter does not dispute that Accord's NDA Product contains an antioxidant.

42.     With respect to a "stabilizing amount" of an antioxidant, the specification of the Patent-in-Suit states:

> The bendamustine-containing compositions according to several preferred aspects of the invention include a stabilizing amount of an antioxidant.   For purposes of the present invention, "stabilizing amount" shall be understood to include those amounts which increase or enhance the stability of the bendamustine in the compositions described herein.  The presence of one or more antioxidants described herein thus contributes, at least in part to the long term stability of the composition. Within this guideline, suitable antioxidant concentrations in the compositions can range from about 2.5 mg/mL to about 35 mg/mL, and preferably from about 5 mg/mL to about 20 mg/mL or from

14

about 10 mg/mL to about 15 mg/mL. In some other embodiments, the concentration of the antioxidant in the bendamustine-containing composition is about 5 mg/mL.

'483 patent at 3:61-4:8.

43.     The Court previously construed a "stabilizing amount of an antioxidant" in a litigation involving two related patents, U.S. Patent Nos. 9,265,831 (the "'831 patent") and 9,572,797 (the "'797 patent"), as "any amount of an antioxidant that decreases the amount of bendamustine degradation after any time period and at any temperature." *Cephalon, Inc. v. Slayback Pharma LLC*, 456 F. Supp. 3d 594, 624-625 (D. Del. Apr. 27, 2020), *affirmed*, 856 F. App'x 309 (Fed. Cir. 2021). The Court found that the written description the '831 patent, "defines a 'stabilizing amount of an antioxidant' as an amount that 'increase[s] or enhance[s] the stability of the bendamustine in the compositions described herein.'… Thus, the 'objective' of the antioxidant amount is not 'unnamed' but is instead 'to increase or enhance the stability of the bendamustine in the compositions' described in the specification." *Id.* at 622. The Court found that a person of ordinary skill in the art "would understand that a stabilizing amount of an antioxidant includes any amount that decreases the amount of bendamustine degradation after any time period and at any temperature." *Id*. at 622-623. The Court further found that in "addition to providing exemplary test methods, the specification also lists 'suitable antioxidant

15

amounts' and 'antioxidants,' and provides examples of 'stabilizing' amounts." *Id*. at 623.

44.    Accord's NDA Product is a ready to use liquid bendamustine-containing composition.  The Accord Notice Letter states that Accord's NDA Product is a "concentration for solution for infusion" and a "liquid composition." The Accord Notice Letter does not dispute that Accord's NDA Product is a ready to use liquid bendamustine-containing composition.

45.    Accord's NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC at a wavelength of 223 nm after at least 15 months at a temperature of from about 5 °C to about 25 °C.  The Accord Notice Letter does not dispute that Accord's NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC at a wavelength of 223 nm after at least 15 months at a temperature of from about 5 °C to about 25 °C.

46.    The proposed labeling for Accord's NDA Product encourages, recommends, instructs, and/or promotes administration of a bendamustine-containing composition to patients with chronic lymphocytic leukemia and indolent B-cell non-Hodgkin lymphoma, which are types of cancer.

47.     This action was commenced before the expiration of forty-five days from the date of the receipt of the Notice Letter.

## COUNT I – INFRINGEMENT BY ACCORD OF U.S. PATENT NO. 11,103,483 UNDER 35 U.S.C. § 271(e)(2)

48.     Eagle incorporates each of the preceding paragraphs as if fully set forth herein.

49.     Accord's submission of NDA No. 216987 for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Accord's NDA Product prior to the expiration of the '483 patent, was an act of infringement of the '483 patent under 35 U.S.C. § 271(e)(2)(A).

50.     The manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Accord's NDA Product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8, either literally and/or under the doctrine of equivalents.

51.     On information and belief, Accord will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Accord's NDA Product with its proposed labeling upon FDA approval of NDA No. 216987.

52.     The manufacture, use, sale, offer for sale, and/or importation of Accord's NDA Product in accordance with and as directed by Accord's proposed labeling for that product would infringe one or more claims of the '483 patent, including but not limited to claims 1 and 8.

17

53.     Upon information and belief, Accord plans and intends to, and will, actively induce infringement of the '483 patent when NDA No. 216987 is approved, and plans and intends to, and will, do so after approval.

54.     On information and belief, Accord knows that its NDA Product and its proposed labeling are especially made or adapted for use in infringing the '483 patent, and that its NDA Product and its proposed labeling are not suitable for substantial non-infringing use.  On information and belief, Accord plans and intends to, and will, induce and/or contribute to infringement of the '483 patent if it obtains FDA approval for NDA No. 216987 with its proposed labeling.

55.     The foregoing actions by Accord constitute and/or will constitute infringement of the '483 patent, active inducement of infringement of the '483 patent, and contribution to the infringement by others of the '483 patent.

56.     On information and belief, Accord has acted with full knowledge of the '483 patent and/or the application leading to the '483 patent, Application No. 16/509,920, and without a reasonable basis for believing that it would not be liable for infringing the '483 patent, actively inducing infringement of the '483 patent, and/or contributing to the infringement by others of the '483 patent.

57.     Unless Accord is enjoined from infringing the '483 patent, actively inducing infringement of the '483 patent, and/or contributing to the infringement by

18

others of the '483 patent, Eagle will suffer irreparable injury.  Eagle has no adequate

remedy at law.

## COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT BY ACCORD OF U.S. PATENT NO. 11,103,483

58.    Eagle incorporates each of the preceding paragraphs as if fully set forth

herein.

59.    Accord has knowledge of the '483 patent and/or the application leading

to the '483 patent, Application No. 16/509,920.

60.    The manufacture, use, offer for sale, sale, marketing, distribution,

and/or importation of Accord's NDA Product would infringe one or more claims of

the '483 patent, including but not limited to claims 1 and 8, either literally or under

the doctrine of equivalents.

61.    On information and belief, Accord will engage in the manufacture, use,

offer for sale, sale, marketing, distribution, and/or importation of Accord's NDA

Product with its proposed labeling upon FDA approval of NDA No. 216987.

62.    The use of Accord's NDA Product in accordance with and as directed

by Accord's proposed labeling for that product would infringe one or more claims

of the '483 patent, including but not limited to claims 1 and 8.

63.    On information and belief, Accord plans and intends to, and will,

actively induce infringement of the '483 patent when NDA No. 216987 is approved,

and plans and intends to, and will, do so after approval.

64.     On information and belief, Accord knows that its NDA Product and its proposed labeling are especially made or adapted for use in infringing the '483 patent, and that its NDA Product and its proposed labeling are not suitable for substantial non-infringing use.  Upon information and belief, Accord plans and intends to, and will, contribute to infringement of the '483 patent after approval of NDA No. 216987.

65.     The foregoing actions by Accord constitute and/or will constitute infringement of the '483 patent, active inducement of infringement of the '483 patent, and contribution to the infringement by others of the '483 patent.

66.     On information and belief, Accord has acted without a reasonable basis for believing that it would not be liable for infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent.

67.     Accordingly, there is a real, substantial, and continuing case or controversy between Eagle and Accord regarding whether Accord's manufacture, use, sale, offer for sale, or importation into the United States of Accord's NDA Product with its proposed labeling according to NDA No. 216987 will infringe one or more claims of the '483 patent.

68.     Eagle should be granted a declaratory judgment that the making, using, sale, offer for sale, and importation into the United States of Accord's NDA Product

with its proposed labeling would infringe, actively induce the infringement of, and contribute to the infringement by others of the '483 patent.

69.    Accord should be enjoined from infringing the '483 patent, actively inducing infringement of the '483 patent, and contributing to the infringement by others of the '483 patent; otherwise Eagle will suffer irreparable injury.  Eagle has no adequate remedy at law.

WHEREFORE, Eagle requests the following relief:

(a)    A judgment that Accord has infringed, will infringe, and will induce and contribute to infringement of the Patent-in-Suit;

(b)    A judgment that the Patent-in-Suit is valid and enforceable;

(c)    A judgment pursuant to 35 U.S.C. § 271(e)(4)(A) ordering that the effective date of any FDA approval for Accord to make, use, offer for sale, sell, market, distribute, or import Accord's NDA Product, or any product or compound the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the Patent-in-Suit, be not earlier than the expiration date of the Patent-in-Suit, inclusive of any extension(s) and additional period(s) of exclusivity;

(d)    A preliminary and permanent injunction pursuant to 35 U.S.C. § 271(e)(4)(B) enjoining Accord from making, using, selling, offering for sale, marketing, distributing, or importing Accord's NDA Product, or any product the making, using, offering for sale, sale, marketing, distribution, or importation of

which infringes the Patent-in-Suit, or the inducement of or the contribution to any of the foregoing, prior to the expiration date of the Patent-in-Suit, inclusive of any extension(s) and additional period(s) of exclusivity;

(e)     A judgment declaring that making, using, selling, offering for sale, marketing, distributing, or importing Accord's NDA Product, or any product or compound the making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the Patent-in-Suit, prior to the expiration date of the Patent-in-Suit, respectively, will infringe, actively induce infringement of, and/or contribute to the infringement by others of the Patent-in-Suit;

(f)     An award of Eagle's damages or other monetary relief to compensate Eagle if Accord engages in the manufacture, use, offer for sale, sale, marketing, distribution, or importation of Accord's NDA Product, or any product making, using, offering for sale, sale, marketing, distribution, or importation of which infringes the Patent-in-Suit, or the inducement of or the contribution to any of the foregoing, prior to the expiration date of the Patent-in-Suit, inclusive of any extension(s) and additional period(s) of exclusivity, in accordance with 35 U.S.C. § 271(e)(4)(C);

(g)     A declaration that this case is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(h)     An award of Eagle's costs and expenses in this action; and

(i)     Such further and other relief as this Court may deem just and proper.

22

Dated: July 6, 2022

MCCARTER & ENGLISH, LLP

/s/ *Daniel M. Silver*
_____
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

OF COUNSEL:

Daniel G. Brown
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 654-7136

*Attorneys for Plaintiff Eagle
Pharmaceuticals, Inc.*

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Jennifer Koh
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400

ME1 41352116v.1